# EXHIBIT A

| Approved, SCAO | Original - Court<br>1st copy - Defendant | | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|

| **STATE OF MICHIGAN**<br>35TH     **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS** | **CASE NO.**<br>20TJ746GC |
|---|---|---|

| Court address<br>660 PLYMOUTH RD, PLYMOUTH, MI 48170 | Court telephone no.<br>734-459-4740 |
|---|---|

Plaintiff's name(s), address(es), and telephone no(s).
RANDAL CRAIG KRUEGER
1098 ANN ARBOR RD W #114
PLYMOUTH, MI 48170

v

Defendant's name(s), address(es), and telephone no(s).
THE MEMORIAL HOSPITAL
826 W. KING ST.
OWOSSO, MI 48867

Plaintiff's attorney, bar no., address, and telephone no.

REGISTERED AGENT
THE MEMORIAL HOSPITAL
BRIAN LONG
826 W. KING ST.
OWOSSO, MI 48867

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>11/7/20 | Expiration date*<br>2/6/21 | Court clerk<br>Jennifer McMillan |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**                     MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**STATE OF MICHIGAN**

**IN THE 35TH DISTRICT COURT**

**GENERAL CIVIL DIVISION**

**RANDAL KRUEGER**

       Plaintiff,

                                      **CASE: 20T2746GC**

**V.**

**THE MEMORIAL HOSPITAL**

       Defendant,

       **Registered agent**

       **Brain Long**

       **826 W. King St**

       **Owosso, MI 48867**

**CERTIFICATE OF SERVICE**

**VIA USPS CERTIFIED / RETURN RECEIPT**

**I certify under the penalty of perjury under the laws of State of Michigan that, on November 25th 2020. I SERVED a true and correct copy of the Summons and Complaint to The Memorial Hospital, 826 W. King St, Owosso, MI 48867 VIA CERTIFIED MAIL # 7020 0640 0000 6756 4410 Registered agent, BRIAN LONG delivery signature confirmation 9590 9402 4754 8344 4074 00. By placing said copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail.**



Dated 11-25-2020

Randal C. Krueger, serving in Pro Se

PREPARED BY R/C/K

1098 Ann Arbor Rd W #114

Plymouth, MI 48170

contact@randalkrueger.com

RANDAL C. KRUEGER · PRO SE     RANDAL C. KRUEGER · PRO SE     RANDAL C. KRUEGER · PRO SE

STATE OF MICHIGAN
IN THE 35TH DISTRICT COURT

**RANDAL CRAIG KRUEGER**

an individual,

Plaintiff,

CASE:20_____

V.

**THE MEMORIAL HOSPITAL**

Defendant,

*Registered Agent –Domestic Michigan Nonprofit Corporation*

*Brian Long , President*

*826 West King Street*

*Owosso, MI 48867*

---

### VERIFIED COMPLAINT for RELIEF

---

Plaintiff, Randal Krueger, by and through oneself and for its complaint commences
litigation against Defendant, The Memorial Hospital, and for his complaint
respectfully states as follows: Randal Craig Krueger ("Plaintiff") brings this action
against Defendant The Memorial Hospital ("Defendant") to stop Defendant's practice
of making illegal calls to the telephone of the Plaintiff, and to obtain redress for
injuries caused by Defendant's conduct. Plaintiff, for their Complaint, allege as
follows upon personal knowledge as to themselves and their own acts and
experiences, and, as to all other matters, upon information and belief, including
investigation conducted by their counsel(s).  Whenever in this complaint it is alleged
that Defendant committed any act or omission, it is meant that the Defendant's

officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## Nature of the Action

1.  This is a complaint for monetary statutory damages.
2.  Defendant has allegedly violated the Telephone Consumer Protection Act (TCPA) Sec. 227., 47 USC § 227(b)(1)(A)(iii) and 47 U.S.C. §227(b)(2)(5), and Defendant has violated the Michigan Home Solicitation Act. Additionally the Michigan Telephone Companies as Common Carriers Act 206 of 1913 and numerous additional federal laws. Plaintiff contends that the Defendant has violated such laws by harassing Plaintiff in attempts to solicit a non prior expressed business relation for medical services that the Plaintiff does not wish and had sent in a cease and desist to The Memorial Hospital that was not honored.
3.  This is not the Plaintiff's first request to resolve this amicability.
4.  Plaintiff had originally wrote their general counsel on October 17, 2019 with no response to that demand nor did Plaintiff cease and desist calls to Plaintiff.

### Parties

5.  Plaintiff Randal Krueger ("Mr. Krueger") is a citizen of Wayne County, Michigan.
6.  Upon information and belief Defendant is a domestic nonprofit corporation, authorized to do business in Michigan with a registered agent who is Brian Long of 828 W. King St., Owosso, MI 48867 (EXHIBIT P 1)

### Jurisdiction and Venue

7. This Court has jurisdiction to grant relief pursuant to District Court Jurisdiction in civil claims: MCL 600.8301 in that this is an action for damages sought less than $25,000.00 exclusive of interest, fees, and costs, and relief sought.

8.   Venue is proper in Wayne County, Michigan, because the causes of action accrued in that county.

9.   Jurisdiction of this Court arises under Mich § 701.

10.  Venue is proper pursuant to 28 U.S.C. §1391(b) Mich § 701. Venue in this county is proper in that the Plaintiff resides here, the Defendant transacts business here, and the conduct complained of occurred here.

11. Venue is proper in Wayne County, Michigan because Defendant intentionally reached into this county, availing itself of the protection of the laws of Michigan, and Defendant's acts in that county gave rise to the cause of action asserted herein.

12. This Court has jurisdiction over Defendant because Defendant engages in business within this state, and its business within this state gave rise to the causes of action asserted herein.

13. This Court has jurisdiction over Defendant because Defendant caused injury to a person within this state, to wit, Mr. Krueger, while it was engaged in service activities, to wit, medical services, within this state.

14. This Court has jurisdiction over Defendant because Defendant carries on business in this State.

15. Defendant has allegedly violated the Michigan Home Solicitations Act. Additionally the Michigan Telephone Companies as Common Carriers Act and the Telephone Consumer Protection Act (TCPA) Sec. 227.  Defendant has violated the acts by calling and or texting the Plaintiff's cell phone for medical treatment which the Plaintiff does not wish and sent in a cease and desist that was not honored.

16. Venue is proper in Wayne County, Michigan, because the acts giving rise to the cause of action took place within that county. Particularly, the offending communications were all made and directed into that County.

17. Venue is proper and granted under The U.S. Supreme Court and under the late Ruth Bader Ginsburg in rulings which has unanimously held that actions brought by private citizens under the Telephone Consumer Protection Act (TCPA) can be heard in either state or federal court, despite language in the statute which most appellate courts had previously interpreted as limiting such claims to state courts. In Mims v. Arrow Financial Services LLC, the Supreme Court resolved the circuit split, ruling that the language of the statute regarding state court jurisdiction is permissive, not mandatory, and insufficient to divest federal courts of jurisdiction over this federal law.

18. Venue is proper for The U.S. Supreme Court was not persuaded that Congress had intended to eliminate federal subject matter jurisdiction when it wrote the above provisions of the TCPA statute. Rather, it found the permissive language to be in general.

19. Hearing is allowed in this court and supported under number of violations present in case law in Susinno v. Work Out World also, Melito v. Experian Marketing Solutions Inc. That the Third Circuit confirms that one call or text is all needed for a violation of the TCPA. Following the Second and Ninth Circuits of appeals. ( EXHIBIT P 2).

## LEGAL BASIS FOR THE CLAIMS
### The TCPA

20. Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent. Calls that include non-marketing messages require consent, but not prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, written consent. The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages $1,500.00 for each willful or knowing violation, as well as injunctive relief.

21. Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA. The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability

attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods which Plaintiff did. In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC 15–72, 30

F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibusdeclaratory-ruling-and-order. The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially. "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time. Derby v. AOL, Inc., No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

22. Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC"). See 47 C.F.R. § 64.1200(d). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." Id. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not Call Registry. Id. at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

23. Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); Birchmeier v. Caribbean Cruise Line, Inc., 2012 WL 7062748 (Dec. 31, 2012).

24. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## THE MICHIGAN TELEPHONE COMPANIES COMMON CARRIERS ACT
## AND MICHIGAN HOME SOLICITATION SALES ACT

25. Michigan Home Solicitation Sales Act 227 of 1971 445.111a Telephonic solicitation using recorded message prohibited; establishment of the state do-not-call list. Sec. 1a. (1) A home solicitation sale shall not be made by telephonic solicitation using in whole or in part a recorded message. A person shall not make a telephone solicitation that consists in whole or in part of a recorded message. (EXHIBIT P 2 ) 445.111c Unfair or deceptive act or practice; violation; penalty; damages.

Sec. 1c. (1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:

(g) Make a telephone solicitation to a consumer in this state who has requested that he or she not receive calls from the organization or other person on whose behalf the telephone solicitation is made. ( EXHIBIT P 3 ) (h) While making a telephone solicitation, misrepresent in a message left for a consumer on his or her answering machine or voice mail that the consumer has a current business matter or transaction or a current business or customer relationship with the telephone solicitor or another person and request that the consumer call the telephone solicitor or another person to discuss that

matter, transaction, or relationship.

26. Michigan Telephone Companies As Common Carriers Act of 206 of 1913

( EXHIBIT  P 4)

Sec. 484.125 Delivering commercial advertising by recorded message; transfer, assignment, or sale of authorization to contact subscriber; evidence of intention to violate act; action for damages; reporting violations; use of automatic dialing equipment; termination of call; violation as misdemeanor; penalty. II-free telephone number to do either of the following: (a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs: (i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller. (ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller. (b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be

available to the subscriber. (3) The authorization to contact a subscriber granted under subsection (2)(a)(i) shall not be transferred, assigned, or sold without the written permission of the subscriber. (4) The use of automated dialing, push-button, or tone activated devices which operate sequentially or are otherwise unable to avoid contacting subscribers who have not authorized the contact as provided in subsection (2) is prima facie evidence of an intention to violate this act. (5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF

27. Beginning around August of 2019, Plaintiff began to receive calls from the number 989-729-4100 and 989-729-4200, on dates not limited to August 15th and December 5th 2019 which is associated with Defendant.

28. Plaintiff received all calls as described above on his cellular telephone which is a paid for cell service per minute or text.

29. Defendant and/or third parties on Defendant's behalf, placed a call as described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Plaintiffs prior express consent.

30. Plaintiff never provided Defendant consent to call him for any purpose.

31. At the time of the calls, Plaintiff did not have a business relationship with Defendant.

34. Plaintiff felt the calls were an invasion of privacy of health services.

35, Plaintiff wrote The Memorial Hospital on or around October 17th 2019 to cease and desist but calls continued from Defendant.

35. Plaintiff believed Defendant called his cellular telephone once using an ATDS that mechanically selected his number from a computer database.

36. On information and belief, Defendant's ATDS called Plaintiff on occasion.

37. The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

38. Plaintiff is the regular carrier and exclusive user of the cellular telephone.

39. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

40. Plaintiff did not provide Defendant with prior express consent to place calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

41. Calls Defendant made to Plaintiff violate 47 U.S.C. § 227(b)(1). (EXHIBIT 6)

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.)

42. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

43. The foregoing acts and omissions of Defendant constitute violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, et seq. and 47 C.F.R. §64.1200, et seq health record to one or more individuals on behalf of a covered entity.

44. As a result of Defendant's violations of 47 U.S.C. § 227, et seq., and 47 C.F.R. §64.1200, et seq., health record to one or more individuals on behalf of a covered entity. Plaintiff is entitled to an award of $1500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

45. Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future being Defendant has ignored Plaintiffs request for cease and desist.

## SECOND CAUSE OF ACTION
### (KNOWING AND/OR WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.)

46. Plaintiff hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

47. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, et seq. and 47 C.F.R. §64.1200, et seq.

48. As a result of Defendant's violations of 47 U.S.C. § 227, et seq., and 47 C.F.R.

§64.1200, et seq. Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

49. Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future being Defendant has ignored Plaintiffs request for cease and desist.


# FOURTH CAUSE OF ACTION
## (VIOLATION OF THE MICHIGAN TELEPHONE COMPANIES COMMON CARRIERS ACT)

53. Plaintiff hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

54. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Michigan Telephone Companies Common Carrier Act, including but not limited to Sec. 484.125. (i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.

  (ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.

(3) The authorization to contact a subscriber granted under subsection (2)(a)(i) shall not be transferred, assigned, or sold without the written permission of the subscriber.

(4) The use of automated dialing, push button, or tone activated devices which operate sequentially or are otherwise unable to avoid contacting subscribers who have not authorized the contact as provided in subsection (2) is prima facie evidence of an intention to violate this act.

(9) A caller who violated this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both.

55. As a result of Defendant's violations of the Michigan Telephone Companies Act, Plaintiff  Section (5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees.


# FIFTH CAUSE OF ACTION

**(VIOLATION OF THE MICHIGAN HOME SOLICITATION SALES ACT)**

56. Plaintiff hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

57. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Michigan Home Solicitation Act 445.111c Unfair or deceptive act or practice; violation; penalty; damages. (3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees.

This subsection does not prevent the consumer from asserting his or her rights under this act if the telephone solicitation results in a home solicitation sale, or asserting any other rights or claims the consumer may have under applicable state or federal law.

58. Plaintiff hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Arbitration Complaint, as though fully set forth herein.

59. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, MICHIGAN HOME SOLICITATION SALES ACT AND MICHIGAN TELEPHONE COMPANIES COMMON CARRIERS ACT.

**FEES**

60. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

61. Plaintiff is entitled to recover reasonable attorney fees and request the attorneys' fees be awarded., Awarding Attorneys' Fees to Prevailing Pro Se Litigants, 80 MICH. L. REV. 1111 (1982).

**PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff prays for relief as follows:**

• An award of $1,500.00 in statutory damages, for each and every willful and/or knowing violation, pursuant to 47 U.S.C. § 227, et seq.;

• An award of $1,000.00 in statutory damages, for each and every violation, pursuant to violation of the Michigan Telephone Companies Common Carriers Act

• An award of $250.00 in statutory damages, for each and every violation, pursuant to violation of violation of the Michigan Home Solicitation Sales Act.

• Preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phone and a phone with a cease and desist in place  and enjoining Defendant from engaging in abusive and practices as outlined in this Complaint.

• Pro Se Attorneys' fees, costs and any and all other relief deemed just and proper by the court.

Dated: October **8**th 2020

Respectfully Submitted,

Randal Krueger, PRO SE or can appoint counsel

Prepared by R/C/K

CONTACT@RANDALKRUEGER.COM

C/O RANDAL CRAIG KRUEGER

1098 ANN ARBOR RD W. #114

PLYMOUTH, MI 48170

734-249-8131

# Randal Craig: Krueger





Randal C. Krueger

**VERIFICATION**

I, Randal Krueger, have read the foregoing complaint and examined any exhibits and statues referenced therein.  The facts stated in the complaint are true.  The appendices are true and fair copies of the recited instruments.

*Randal Krueger*                    10-8-2020

Randal Krueger                    date signed

The above named Affiant appeared before me, a Notary, subscribed, sworn

under oath this ___8___ day of _October_, 2020.

Notary

BROOKE REID
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Comm. Exp. 07/23/2022
Acting in the County of Wayne
Date 10.12.2020

My commission expires: _07/23/2022_          seal

EXHIBT

P 1

LARA Home    Contact LARA    Online Services    News    MI.gov

# LARA Corporations Online Filing System
## Department of Licensing and Regulatory Affairs

ID Number: 800851427   | Request certificate | Return to Results | New search |

**Summary for: THE MEMORIAL HOSPITAL**

The name of the DOMESTIC NONPROFIT CORPORATION:  THE MEMORIAL HOSPITAL

Entity type:  DOMESTIC NONPROFIT CORPORATION

Identification Number: 800851427  Old ID Number: 771123

Date of Incorporation in Michigan:  05/17/1919

Purpose:

Term:  Perpetual

Most Recent Annual Report:  2019         Most Recent Annual Report with Officers & Directors:  2019

**The name and address of the Resident Agent:**

Resident Agent Name:      BRIAN LONG

Street Address:      826 W KING ST

Apt/Suite/Other:

City:      OWOSSO         State:  MI         Zip Code:   48867

**Registered Office Mailing address:**

P.O. Box or Street Address:      826 W. KING ST

Apt/Suite/Other:

City:      OWOSSO         State:  MI         Zip Code:   48867

**The Officers and Directors of the Corporation:**

| Title | Name | Address |
|---|---|---|
| PRESIDENT | BRIAN LONG | 980 CHIPMAN LANE OWOSSO, MI 48867 USA |
| TREASURER | WILFRED FARRELL | 1528 HIAWATHA DRIVE OWOSSO, MI 48867 USA |
| SECRETARY | JERRY WALDEN | 4720 WAUGH ROAD OWOSSO, MI 48867 USA |
| DIRECTOR | DR. MICHAEL SCHMIDT | 1105 W. KING STREET OWOSSO, MI 48867 USA |
| DIRECTOR | THOMAS CAMPBELL | 1387 N. CHIPMAN ROAD OWOSSO, MI 48867 USA |
| DIRECTOR | DR. MICHAEL KRAMER | 152 CLOVERBROOK OWOSSO, MI 48867 USA |
| DIRECTOR | DR. ANTHONY PATSY | 11253 POTTER ROAD FLUSHING, MI 48433 USA |
| DIRECTOR | SHANA ESPINOZA | 15111 BRIGGS RD. CHESANING, MI 48616 USA |
| DIRECTOR | JACKLYN HURD | 7450 S. M-52 OWOSSO, MI 48867 USA |
| DIRECTOR | TONY YOUNG | 2211 N. CHIPMAN RD. OWOSSO, MI 48867 USA |
| DIRECTOR | DALE ESPICH | 820 W. CORUNNA AVENUE, APT. 4A CORUNNA, MI 48817 USA |
| DIRECTOR | BARBARA BAKEROMEROD | 12375 W. LENNON RD. LENNON, MI 48449 USA |
| DIRECTOR | DR. RONALD BISHOP | 2576 KOALA DRIVE EAST LANSING, MI 48823 USA |
| DIRECTOR | DONNA MCAVOY | 1515 N. CHIPMAN OWOSSO, MI 48867 USA |
| DIRECTOR | GREGORY BONTRAGER | 169 E. HAVEN DRIVE OWOSSO, MI 48867 USA |
| DIRECTOR | JAMES CIVILLE | 403 W. OLIVER STREET OWOSSO, MI 48867 USA |
| DIRECTOR | JOHN HAGEL | 5098 HARVEST LANE CLIO, MI 48420 USA |

**Act Formed Under:**  171-1903 Associations not for Pecuniary Profit

☐ Written Consent

| View Assumed Names for this Business Entity |

View filings for this business entity:

ALL FILINGS
ANNUAL REPORT/ANNUAL STATEMENTS
ARTICLES OF INCORPORATION
ARTICLES OF INCORPORATION
RESTATED ARTICLES OF INCORPORATION

View filings

Comments or notes associated with this business entity:



**EXHIBIT**

P 1

EXHIBT

P 2

## HOME SOLICITATION SALES
### Act 227 of 1971

AN ACT to prescribe the rights and duties of parties to home solicitation sales; to regulate certain telephone solicitation; to provide for the powers and duties of certain state officers and entities; and to prescribe penalties and remedies.

History: 1971, Act 227, Imd. Eff. Jan. 3, 1972;—Am. 2002, Act 612, Eff. Mar. 31, 2003.

*The People of the State of Michigan enact:*

### 445.111 Definitions.

Sec. 1. As used in this act:

(a) "Home solicitation sale" means a sale of goods or services of more than $25.00 in which the seller or a person acting for the seller engages in a personal, telephonic, or written solicitation of the sale, the solicitation is received by the buyer at a residence of the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller. Home solicitation sale does not include any of the following:

(*i*) A sale made pursuant to a preexisting revolving charge account.

(*ii*) A sale made pursuant to prior negotiations between the parties at a business establishment at a fixed location where goods or services are offered or exhibited for sale.

(*iii*) A sale or solicitation of insurance by an insurance agent licensed by the commissioner of insurance.

(*iv*) A sale made at a fixed location of a business establishment where goods or services are offered or exhibited for sale.

(*v*) A sale made pursuant to a printed advertisement in a publication of general circulation.

(*vi*) A sale of services by a real estate broker or salesperson licensed by the department of consumer and industry services.

(*vii*) A sale of agricultural or horticultural equipment and machinery that is demonstrated to the consumer by the vendor at the request of either or both of the parties.

(b) "Fixed location" means a place of business where the seller or an agent, servant, employee, or solicitor of that seller primarily engages in the sale of goods or services of the same kind as would be sold at the residence of a buyer.

(c) "Business day" means Monday through Friday and does not include Saturday, Sunday, or the following business holidays: New Year's day, Martin Luther King's birthday, Washington's birthday, Memorial day, Independence day, Labor day, Columbus day, Veterans' day, Thanksgiving day, and Christmas day.

(d) "Federally insured depository institution" means a state or national bank, state or federal savings bank, state or federal savings and loan association, or state or federal credit union that holds deposits insured by an agency of the United States.

(e) As used in only the definition of home solicitation sales, "goods or services" does not include any of the following:

(*i*) A loan, deposit account, or trust account lawfully offered or provided by a federally insured depository institution or a subsidiary or affiliate of a federally insured depository institution.

(*ii*) An extension of credit that is subject to any of the following acts:

(A) The mortgage brokers, lenders, and servicers licensing act, 1987 PA 173, MCL 445.1651 to 445.1684.

(B) The secondary mortgage loan act, 1981 PA 125, MCL 493.51 to 493.81.

(C) The regulatory loan act, 1939 PA 21, MCL 493.1 to 493.24.

(D) The consumer financial services act, 1988 PA 161, MCL 487.2051 to 487.2072.

(E) 1984 PA 379, MCL 493.101 to 493.114.

(F) The motor vehicle sales finance act, 1950 (Ex Sess) PA 27, MCL 492.101 to 492.141.

(*iii*) A sale of a security or interest in a security that is subject to the uniform securities act, 1964 PA 265, MCL 451.501 to 451.818, or the uniform securities act (2002), 2008 PA 551, MCL 451.2101 to 451.2703.

(f) "Written solicitation" means a postcard or other written notice delivered to a buyer's residence that requests that the buyer contact the seller or seller's agent by telephone to inquire about a good or service, unless the postcard or other written notice concerns a previous purchase or order or specifies the price of the good or service and accurately describes the good or service.

(g) "ADAD" or "automatic dialing and announcing device" means any device or system of devices that is used, whether alone or in conjunction with other equipment, for the purpose of automatically selecting or dialing telephone numbers.

(h) "Commission" means the public service commission.


PLAINTIFF'S EXHIBIT
Pd A

(i) "Do-not-call list" means a do-not-call list of consumers and their residential telephone numbers maintained by the commission, by a vendor designated by the commission, or by an agency of the federal government, under section 1a.

(j) "Existing customer" means an individual who has purchased goods or services from a person, who is the recipient of a voice communication from that person, and who either paid for the goods or services within the 12 months preceding the voice communication or has not paid for the goods and services at the time of the voice communication because of a prior agreement between the person and the individual.

(k) "Person" means an individual, partnership, corporation, limited liability company, association, governmental entity, or other legal entity.

(l) "Residential telephone subscriber" or "subscriber" means a person residing in this state who has residential telephone service.

(m) "Telephone solicitation" means any voice communication over a telephone for the purpose of encouraging the recipient of the call to purchase, rent, or invest in goods or services during that telephone call. Telephone solicitation does not include any of the following:

(i) A voice communication to a residential telephone subscriber with that subscriber's express invitation or permission prior to the voice communication.

(ii) A voice communication to an existing customer of the person on whose behalf the voice communication is made, unless the existing customer is a consumer who has requested that he or she not receive calls from or on behalf of that person under section 1c(1)(g).

(iii) A voice communication to a residential telephone subscriber in which the caller requests a face-to-face meeting with the residential telephone subscriber to discuss a purchase, sale, or rental of, or investment in, goods or services but does not urge the residential telephone subscriber to make a decision to purchase, sell, rent, invest, or make a deposit on that good or service during the voice communication.

(n) "Telephone solicitor" means any person doing business in this state who makes or causes to be made a telephone solicitation from within or outside of this state, including, but not limited to, calls made by use of automated dialing and announcing devices or by a live person.

(o) "Vendor" means a person designated by the commission to maintain a do-not-call list under section 1a. The term may include a governmental entity.

History: 1971, Act 227, Imd. Eff. Jan. 3, 1972;—Am. 1978, Act 152, Imd. Eff. May 18, 1978;—Am. 1980, Act 108, Imd. Eff. May 10, 1980;—Am. 1998, Act 126, Imd. Eff. June 10, 1998;—Am. 1999, Act 18, Imd. Eff. Apr. 28, 1999;—Am. 2002, Act 612, Eff. Mar. 31, 2003;—Am. 2009, Act 93, Imd. Eff. Sept. 24, 2009.

### 445.111a Telephonic solicitation using recorded message prohibited; establishment of state do-not-call list.

Sec. 1a. (1) A home solicitation sale shall not be made by telephonic solicitation using in whole or in part a recorded message. A person shall not make a telephone solicitation that consists in whole or in part of a recorded message.

(2) Within 120 days after the effective date of the amendatory act that added this subsection, the commission shall do 1 of the following:

(a) Establish a state do-not-call list. All of the following apply if the commission establishes a do-not-call list under this subdivision:

(i) The commission shall publish the do-not-call list quarterly for use by telephone solicitors.

(ii) The do-not-call list fund is created in the state treasury. Money received from fees under subparagraph (iii) shall be credited to the fund. The state treasurer shall direct the investment of the fund. The state treasurer shall credit to the fund interest and earnings from fund investments. Money remaining in the fund at the end of a fiscal year shall be carried over in the fund to the next and succeeding fiscal years. Money in the fund may be appropriated to the commission to cover the costs of administering the do-not-call list, but may not be appropriated to compensate or reimburse a vendor designated under subdivision (b) to maintain a do-not-call list under that subdivision.

(iii) The commission shall establish and collect 1 or both of the following fees to cover the costs to the commission for administering the do-not-call list:

(A) Fees charged to telephone solicitors for access to the do-not-call list.

(B) Fees charged to residential telephone subscribers for inclusion on the do-not-call list. The commission shall not charge a residential telephone subscriber a fee of more than $5.00 for a 3-year period.

(iv) The commission shall maintain the do-not-call list for at least 1 year. After 1 year, the commission may at any time elect to designate a vendor to maintain a do-not-call list under subdivision (b), in which case subdivision (b) shall apply.

(b) Designate a vendor to maintain a do-not-call list. All of the following apply to a vendor designated to

PLAINTIFF'S EXHIBIT
P2 B

maintain a do-not-call list under this subdivision:

(*i*) The commission shall establish a procedure or follow existing procedure for the submission of bids by vendors to maintain a do-not-call list under this subdivision.

(*ii*) The commission shall establish a procedure or follow existing procedure for the selection of the vendor to maintain the do-not-call list. In selecting the vendor, the commission shall consider at least all of the following factors:

(A) The cost of obtaining and the accessibility and frequency of publication of the do-not-call list to telephone solicitors.

(B) The cost and ease of registration on the do-not-call list to consumers who are seeking inclusion on the do-not-call list.

(*iii*) The commission may review its designation and make a different designation under this subdivision if the commission determines that another person would be better than the designated vendor in meeting the selection factors established under subparagraph (*ii*) or if the designated vendor engages in activities the commission considers contrary to the public interest.

(*iv*) If the commission does not establish a state do-not-call list under subdivision (a), the commission shall comply with the designation requirements of this subdivision for at least 1 year. After 1 year, the commission may at any time elect to establish and maintain a do-not-call list under subdivision (a), in which case subdivision (a) shall apply.

(*v*) Unless the vendor is a governmental entity, a vendor designated by the commission under this subdivision is not a governmental agency and is not an agent of the commission in maintaining a do-not-call list.

(*vi*) The commission and a vendor designated under this subdivision shall execute a written contract. The contract shall include the vendor's agreement to the requirements of this section and any additional requirements established by the commission.

(*vii*) The commission shall not use state funds to compensate or reimburse a vendor designated under this subdivision. The vendor may receive compensation or reimbursement for maintaining a designated do-not-call list under this subdivision only from 1 or both of the following:

(A) Fees charged by the vendor to telephone solicitors for access to the do-not-call list.

(B) Fees charged by the vendor to residential telephone subscribers for inclusion on the do-not-call list. A designated vendor shall not charge a residential telephone subscriber a fee of more than $5.00 for a 3-year period.

(*viii*) The designee do-not-call list fund is created in the state treasury. If the vendor is a department or agency of this state, money received from fees under subparagraph (*vii*) by that vendor shall be credited to the fund. The state treasurer shall direct the investment of the fund. The state treasurer shall credit to the fund interest and earnings from fund investments. Money remaining in the fund at the end of a fiscal year shall be carried over in the fund to the next and succeeding fiscal years. Money in the fund may be appropriated to that vendor to cover the costs of administering the do-not-call list.

(3) In determining whether to establish a state do-not-call list under subsection (2)(a) or designate a vendor under subsection (2)(b), and in designating a vendor under subsection (2)(b), the commission shall consider comments submitted to the commission from consumers, telephone solicitors, or any other person.

(4) Beginning 90 days after the commission establishes a do-not-call list under subsection (2)(a) or designates a vendor to maintain a do-not-call list under subsection (2)(b), a telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of that do-not-call list.

(5) Notwithstanding any other provision of this section, if an agency of the federal government establishes a federal do-not-call list, within 120 days after the establishment of the federal do-not-call list, the commission shall designate the federal list as the state do-not-call list. The federal list shall remain the state do-not-call list as long as the federal list is maintained. A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal list.

(6) A telephone solicitor shall not use a do-not-call list for any purpose other than meeting the requirements of subsection (4) or (5).

(7) The commission or a vendor shall not sell or transfer the do-not-call list to any person for any purpose unrelated to this section.

**History:** Add. 1978, Act 152, Imd. Eff. May 18, 1978;—Am. 2002, Act 612, Eff. Mar. 31, 2003.

**445.111b Information to be provided by person making telephone solicitation; interference with caller ID function prohibited.**

PLAINTIFF'S
EXHIBIT
P2 C

Sec. 1b. (1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made.

(2) The person answering the telephone number required under subsection (1) shall provide a residential telephone subscriber calling the telephone number with information describing the organization or other person on whose behalf the telephone solicitation was made to the residential telephone subscriber and describing the telephone solicitation.

(3) A telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber.

**History:** Add. 2002, Act 612, Eff. Mar. 31, 2003.

**445.111c Unfair or deceptive act or practice; violation; penalty; damages.**

Sec. 1c. (1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:

(a) Misrepresent or fail to disclose, in a clear, conspicuous, and intelligible manner and before payment is received from the consumer, all of the following information:

(*i*) Total purchase price to the consumer of the goods or services to be received.

(*ii*) Any restrictions, limitations, or conditions to purchase or to use the goods or services that are the subject of an offer to sell goods or services.

(*iii*) Any material term or condition of the seller's refund, cancellation, or exchange policy, including a consumer's right to cancel a home solicitation sale under section 2 and, if applicable, that the seller does not have a refund, cancellation, or exchange policy.

(*iv*) Any material costs or conditions related to receiving a prize, including the odds of winning the prize, and if the odds are not calculable in advance, the factors used in calculating the odds, the nature and value of a prize, that no purchase is necessary to win the prize, and the "no purchase required" method of entering the contest.

(*v*) Any material aspect of an investment opportunity the seller is offering, including, but not limited to, risk, liquidity, earnings potential, market value, and profitability.

(*vi*) The quantity and any material aspect of the quality or basic characteristics of any goods or services offered.

(*vii*) The right to cancel a sale under this act, if any.

(b) Misrepresent any material aspect of the quality or basic characteristics of any goods or services offered.

(c) Make a false or misleading statement with the purpose of inducing a consumer to pay for goods or services.

(d) Request or accept payment from a consumer or make or submit any charge to the consumer's credit or bank account before the telephone solicitor or seller receives from the consumer an express verifiable authorization. As used in this subdivision, "verifiable authorization" means a written authorization or confirmation, an oral authorization recorded by the telephone solicitor, or confirmation through an independent third party.

(e) Offer to a consumer in this state a prize promotion in which a purchase or payment is necessary to obtain the prize.

(f) Fail to comply with the requirements of section 1a or 1b.

(g) Make a telephone solicitation to a consumer in this state who has requested that he or she not receive calls from the organization or other person on whose behalf the telephone solicitation is made.

(h) While making a telephone solicitation, misrepresent in a message left for a consumer on his or her answering machine or voice mail that the consumer has a current business matter or transaction or a current business or customer relationship with the telephone solicitor or another person and request that the consumer call the telephone solicitor or another person to discuss that matter, transaction, or relationship.

(2) Except as provided in this subsection, beginning 210 days after the effective date of the amendatory act that added this section, a person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both. This subsection does not prohibit a person from being charged with, convicted of, or punished for any other crime including any other violation of law arising out of the same transaction as the violation of this section. This subsection does not apply if the violation of this section is a failure to comply with the requirements of section 1a(1), (4), or (5) or section 1b.

PLAINTIFF'S EXHIBIT
P2D

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees. This subsection does not prevent the consumer from asserting his or her rights under this act if the telephone solicitation results in a home solicitation sale, or asserting any other rights or claims the consumer may have under applicable state or federal law.

History: Add. 2002, Act 612, Eff. Mar. 31, 2003;—Am. 2006, Act 133, Imd. Eff. May 12, 2006.

**445.111d Do-not-call list; notice of description and enrollment; "telecommunication provider" defined.**

Sec. 1d. (1) Beginning 210 days after the effective date of the amendatory act that added this section, if a telephone directory includes residential telephone numbers, a person that publishes a new telephone directory shall include in the telephone directory a notice describing the do-not-call list and how to enroll on the do-not-call list.

(2) Beginning 210 days after the effective date of the amendatory act that added this section, each telecommunication provider that provides residential telephone service shall include a notice describing the do-not-call list and how to enroll on the do-not-call list with 1 of that telecommunication provider's bills for telecommunication services to a residential telephone subscriber each year. If the federal communication commission or any other federal agency establishes a federal "do not call" list, the notice shall also describe that list and how to enroll on that list. As used in this subsection, "telecommunication provider" means that term as defined in section 102 of the Michigan telecommunications act, 1991 PA 179, MCL 484.2102.

History: Add. 2002, Act 612, Eff. Mar. 31, 2003.

**445.111e Applicability of MCL 445.111a, 445.111b, 445.111c, and 445.111d.**

Sec. 1e. Sections 1a, 1b, 1c, and 1d do not apply to a person subject to any of the following:

(a) The charitable organizations and solicitations act, 1975 PA 169, MCL 400.271 to 400.294.

(b) The public safety solicitation act, 1992 PA 298, MCL 14.301 to 14.327.

(c) Section 527 of the internal revenue code of 1986.

History: Add. 2002, Act 612, Eff. Mar. 31, 2003.

**445.112 Right of buyer to cancel home solicitation sale; time; notice of cancellation; restriction on right to cancel; sale subject to debtor's right to rescind.**

Sec. 2. (1) Except as explained in subsection (5), in addition to any right otherwise to revoke an offer, a buyer has the right to cancel a home solicitation sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase that complies with this act. The seller in a home solicitation sale shall not acquire payment by having an independent courier service or other third party pick up the buyer's payment at the buyer's residence until after the buyer's right-to-revoke period prescribed by this act has expired.

(2) Cancellation occurs when the buyer mails or delivers the notice of cancellation provided for in section 3(2) or any other written notice, or sends a telegram, to the seller at the address stated in the notice of cancellation.

(3) A notice of cancellation or other written notice, if mailed to the seller, is given when it is deposited in a mailbox properly addressed and postage prepaid.

(4) A written notice or telegram given by the buyer other than the notice of cancellation need not take a particular form and is sufficient if it indicates by any form of written expression the intention of the buyer not to be bound by the home solicitation sale.

(5) A buyer may not cancel a home solicitation sale if the buyer requests the seller to provide goods or services without delay because of an emergency, and all of the following conditions are met:

(a) The seller in good faith makes a substantial beginning of performance of the contract before the buyer gives notice of cancellation.

(b) The buyer furnishes the seller with a separate dated and signed personal statement in the buyer's handwriting describing the situation requiring immediate remedy and expressly acknowledging and waiving the right to cancel the sale within 3 business days.

(c) In the case of goods, the goods cannot be returned to the seller in substantially as good condition as when received by the buyer.

(6) If a home solicitation sale is also subject to the debtor's right to rescind certain transactions, the buyer may proceed either under those provisions or under this section.

History: 1971, Act 227, Imd. Eff. Jan. 3, 1972;—Am. 1978, Act 152, Imd. Eff. May 18, 1978;—Am. 2000, Act 15, Imd. Eff. Mar. 8, 2000.


PLAINTIFF'S EXHIBIT
P2E

EXHIBT

P 3

TCPA Violations: Risk Avoidance Strategies for Healthcare Entities and Providers

# FOR PUBLIC RELEASE

## Potential Consequences and Strategies

The TCPA provides for strict liability and statutory damages of up to $500 per call or message, and up to $1,500 per knowing or willful violation.[7] Because there is no maximum cap on damages, aggregate exposure in class action lawsuits can be potentially significant.  In fact, class basis settlements have reached multi-million dollar proportions, including the following recent actions:

*Kolinek v. Walgreens Co.* (N.D. Ill. 2015), involving automated prescription refill reminders to cell phones, which settled for $11 million.[8]

*Lees v. Anthem Insurance Cos., Inc.* (E.D. Mo. 2015), involving autodialed calls to cell phones placed by a healthcare vendor, which settled for upwards of $6.25 million.[9]

*Ferencz v. International Clinic Consultants, LLC* (Wash. Sup. Ct. 2014), involving unsolicited text message advertisements that promoted services for a men's health clinic, which settled for $3.5 million.[10]

Moreover, the number of lawsuits filed under the TCPA is rising at an alarming rate, as depicted in Figure 1, accounting for a 70% increase from 2012 to 2013.

In response to the upward trend in litigation, healthcare organizations and providers may wish to consider certain proactive measures to avoid liability and potentially catastrophic penalties. Enhancing an organization's strategic position starts with a risk analysis of existing telecommunication practices and system functions that are subject to the TCPA. The analysis aims to define all telecommunication methods utilized by the healthcare entity, its providers, and third party vendors to communicate with patients, including but not limited to:



Figure 1 - TCPA Lawsuit Filing Trends

Legend:
- 40 lawsuits
- 354 lawsuits
- 830 lawsuits
- 1,102 lawsuits
- 1,871 lawsuits
- 2,336 lawsuits

Source: Lunsford, P. "FDCPA Lawsuits Decline for Third Straight Year, But TCPA Suits Up 25%," posted on January 23, 2015, insideARM.com. (http://www.insidearm.com/daily/fdcpa-lawsuits-decline-for-third-straight-year-but-tcpa-suits-up-25/)

- automated calling equipment

- predictive dialers

- artificial or prerecorded voices

- text messaging

- fax advertising

- telemarketing practices

In addition, the scope of the analysis should encompass an assessment of current safeguards, such as the seven conditions delineated above, in order to sufficiently gauge the existing state of compliance with regulatory requirements. When necessary, couple the analysis with an audit of vendors and third party administrators, whose actions are subject to the TCPA, in order to ensure that their practices and safeguards remain compliant as well.

Organizational leaders are urged to thoroughly review and confirm that all consent and HIPAA-related documents contain the requisite provisions to secure a patient's prior express consent to all non-exempt autodialed calls. Records of patient consent should be meticulously preserved, as well as all instances of consent revocation, do-not-call requests, or reassigned numbers. When a patient's consent status changes, swift action is required to immediately terminate any call that is both unconsented and subject to the TCPA.

A formal and written protocol that delineates the phone number collection process is another effective safeguard for reinforcing staff expectations. The protocol must ensure that wireless and residential numbers are easily distinguished in both patient care and business records. With respect to placed calls, a written or electronic log should track which phone numbers are manually dialed and which are autodialed.

Optimally, hospital leadership must work closely with legal counsel to ensure that all telemarketing messages, fax advertisements, and other marketing activities comply with the privacy safeguards articulated in HIPAA, the FCC regulations, and the TCPA. Annual staff training, jointly presented by legal counsel and risk management, is an additional measure to help maintain compliance levels regarding relevant updates and/or clarifications to the TCPA and associated FCC regulations.

4





 **NAHAM Checklist:**
**TCPA Exempt Calls for Healthcare Providers and their HIPPA**

*The Federal Communications Commission (FCC) issued a Declaratory Ruling and Order on July 10, 2015, addressing several regulatory provisions of the Telephone Consumer Protection Act (TCPA). The TCPA's HIPAA exemption extends to advertising and marketing calls to cell phone and residential landlines. Under the exemption, calls that deliver a __healthcare message__ made by or on behalf of a "covered entity" or its "business associate" (as these terms are defined in HIPAA) do not require the prior express consent of the party called.*

### The FCC July Clarifications

1. An individual's provision of his or her cell phone number is effectively an invitation to be contacted at that number, as long as the calls or texts are limited in scope to the purpose the number was provided in the first place. Healthcare providers can rely on the voluntary provision of a cell phone number as constituting prior express consent under the TCPA.

2. In situations where a patient is incapacitated and unable to provide a telephone number directly to a healthcare provider, a third party HIPAA-covered intermediary is allowed to provide a number. Consent by a third party on behalf of an incapacitated individual will end when the individual is no longer incapacitated, at which time the provider must get prior express consent from the individual being called.

3. Non-telemarketing healthcare calls, for which the called party is not charged, are exempt from the prior express consent requirement. The FCC provided these examples –
   - Appointment and exam confirmations and reminders
   - Wellness check-ups
   - Hospital pre-registration instructions
   - Pre-operative instructions
   - Lab results
   - Post-discharge follow- up intended to prevent readmission; prescription notifications
   - Home healthcare instructions

4. Healthcare calls related to accounting, billing, debt collection or containing other financial content are __not__ part of this exemption.

5. The content of the exempt calls continue to be subject to HIPPA privacy rules. The FCC reiterates that for purposes of these TCPA exemptions –
   - Calls must be free to the end user;
   - Calls must be made by or on behalf of a healthcare provider;
   - Calls can only be made or sent to the cell phone number provided by the patient;
   - Calls or texts must state the name and contact information of the healthcare provider;
   - Calls or texts must be "concise" (one minute or less for voice calls and 160 characters or less for text messages);
   - Healthcare providers may only make one exempt call or send one exempt text per day (per recipient), with a weekly limit of three total calls or texts (per recipient); and
   - Healthcare providers must offer recipients an opportunity to opt out of receiving these types of calls or texts, and honor those opt outs immediately.

*The FCC's Declaratory Ruling and Order may be found at its webpage using this address: https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order. A "NAHAM TCPA Checklist", as well as NAHAM's "Deconstructing the FCC's Declaratory Ruling on TCPA Regulations – What it Means for Healthcare Providers", may be found on the NAHAM webpage using this address: www.naham.org.*

PLAINTIFF'S EXHIBIT
P3 B

## 2015 DECLARATORY RULING

- Who is the "called party" under the TCPA?
  - Certain calls that would otherwise be improper are permissible if made with "prior express consent of the *called party*"
  - Reassigned number problem
  - Intended recipient or successor subscriber?
- The 2015 Order
  - Concluded that the term "called party" should be defined as "the subscriber" – "the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user"
  - Rejected requests to construe a called party as the "intended recipient" of the call
  - Stated that calls to reassigned numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based



HOLLAND & HART



PLAINTIFF'S EXHIBIT
P3C

# EXAMPLES



*Zani  v. Rite Aid Headquarters Corp.*, 246 F. Supp. 3d 835, 843 (S.D.N.Y. 2017), *aff'd*, 725 Fed. Appx. 41,43 (2d Cir. 2018).



*Bailey v. CVS Pharmacy, Inc.*, 2018 WL 3866701, at *4 (D.N.J. Aug. 14, 2018)

**But see**: *Coleman v. Rite Aid of Georgia, Inc.*, 284 F. Supp. 3d 1343, 1344 (N.D. Ga. 2018)

Coleman received pre-recorded automated voice messages from Rite Aid regarding prescription medications on his mobile phone

Calls were directed to someone else

Coleman requested that they stop, but he continued receiving them

Because he did not provide *any* consent, the Health Care Rule did not apply

Court held that the Exigent Healthcare Treatment Exemption did not apply
- No opt-out mechanism; Coleman's opt-out request was not honored





**Michigan Public Service Commission**
P.O. Box 30221
Lansing, MI 48909
800.292.9555

# consumer
## TIPS

January 2020

michigan.gov/mpsc

# The Do Not Call List

Telemarketing calls often interrupt consumers' family time and personal lives. Two governmental agencies provide protection from abusive and deceptive telemarketing sales practices: (1) the Federal Communications Commission (FCC) adopted rules implementing the Telephone Consumer Protection Act to protect consumers from receiving unsolicited telephone marketing calls; and (2) the Federal Trade Commission issued the Telemarketing Sales Rule to protect consumers from telephone fraud.

### Consumer Protections Provided by these Rules

It is illegal for a telemarketer to:

- Call you if you have clearly stated that you want to be added to their Do Not Call list;
- Call before 8 a.m. and after 9 p.m.;
- Tie-up your home telephone line with autodialed and prerecorded voice messages;
- Neglect to tell you at the beginning of the call the company name and what they are selling;
- Misrepresent any information or facts about their goods or services, earnings potential, profitability, risk, etc.
- Ask you for payment before telling you the total cost of goods, whether a sale is final or non- refundable, the odds of winning a prize, and any restrictions or conditions on getting the prize;
- Withdraw money from your account without expressed, verifiable authorization; authorization from you must be written or tape recorded and made available to your bank upon request;
- Request a fee before providing the service, lie to get you to pay for any goods or services;

These are just some of the rule requirements.

### What actions can you take?

Ask the telephone solicitor to place your name on the caller's Do Not Call list. Also, obtain the name and address of the solicitor and send a written notice to verify the placement of your name on the Do Not Call list.

### The Do Not Call Registry

Michigan consumers can register for the Federal Trade Commission's (FTC) Do Not Call Registry by phone or online. Registration is free and covers landline and wireless phone numbers. To register by phone, dial (888) 382-1222 from the number you want to register. To sign up online, visit the FTC's website, donotcall.gov. Online registration requires an active e-mail. If you register online, the FTC will send a message with a link. You need to click on the link within 72 hours to finalize registration.

*Nonprofit organizations are not required to maintain "Do Not Call" lists. The Do Not Call rule applies to residential telephone numbers, but does not apply to calls placed to business telephone numbers.*

### Exceptions

Although registration is designed to prevent most unwanted telemarketing calls, it will not stop all sales calls. The following types of organizations and businesses are exempt from the Do Not Call List law:

### Michigan Exemptions

- Charitable organizations;
- Public safety organizations;
- Companies with which a person has previously conducted business, unless the customer has specifically requested to be added to the company's Do Not Call list;



PLAINTIFF'S EXHIBIT

P3E



**Michigan Public Service Commission**

Telephone numbers are removed from the registry when they are disconnected and reassigned, or when you choose to remove a number.

## When did the National Do Not Call Registry take effect?

The Federal Trade Commission, the Federal Communications Commission and the states began enforcing the National Do Not Call Registry on October 1, 2003.

## Does the National Do Not Call Registry cover all telemarketing calls?

Placing your number on the National Do Not Call Registry will stop most telemarketing calls, but not all. Calls from or on behalf of political organizations, charities and telephone surveyors are permitted.

If you have an established relationship with a business, it can call you for up to 18 months after your last purchase, payment or delivery — even if your number is on the National Do Not Call Registry. If you make an inquiry or submit an application to a company, it can call you for three months afterward. Carefully read any questionnaires or surveys you submit, because they may be an attempt to establish a business relationship. Also be careful to read anything you sign, such as sweepstakes forms or requests for "free" products; they may be attempts to get your written permission for future calls.

If you place your number on the national registry, you can give written permission for a company to call you. Alternately, if you have an established business relationship, you can ask the company not to call you. The company must honor your request, even if you previously gave written permission.

If you don't put your number on the national registry, you can prohibit individual telemarketers from calling by asking each to put you on their company's do not call list. You should keep a record of the date you make the request.

Although callers who ask for charitable contributions do not have to search the national registry, a for-profit telemarketer calling on behalf of a charitable organization must honor your request not to receive calls on behalf of that charity.

## Are there other protections against unwanted telemarketing calls?

PLAINTIFF'S
EXHIBIT
P3P



FEDERAL TRADE COMMISSION

## Consumer Information

consumer.ftc.gov

# The Telemarketing Sales Rule

The Federal Trade Commission's Telemarketing Sales Rule (TSR) puts you in charge of the number of telemarketing calls you get at home. The TSR established the National Do Not Call Registry, which makes it easier and more efficient for you to reduce the number of unwanted telemarketing sales calls you get.

## How can I put my number on the National Do Not Call Registry?

You may register online at donotcall.gov (http://www.donotcall.gov/), if you have a working email address, or by phone, by calling toll-free 1-888-382-1222 (TTY: 1-866-290-4236) from the number you wish to register. Registration is free.

## How does registration work?

If you register by phone, you must call from the number you want to register. If you register online, you must provide an email address for confirmation. The system will send you a confirmation email. To complete your registration, click on the link in the email within 72 hours after you get it. You can expect fewer calls within 31 days of the date you sign up for the registry. The phone number that you register is the only identifying information that is provided to telemarketers and other companies that use the registry.

## How does the National Do Not Call Registry work?

The law requires telemarketers to search the registry every 31 days and avoid calling any phone number on the registry. If you receive telemarketing calls after your telephone number has been in the registry for 31 days, you can file a complaint at donotcall.gov (http://www.donotcall.gov/) or by calling toll-free 1-888-382-1222 (TTY: 1-866-290-4236). You need to know the date of the call and the company's name or phone number to file a do not call complaint. A telemarketer who disregards the National Do Not Call Registry could be fined up to $40,000 for each call.

PLAINTIFF'S
EXHIBIT
P36

# PRIOR EXPRESS CONSENT

**Telemarketing/Advertising calls require "*prior express written consent*"**

- Defined as "an agreement in writing, bearing the signature of the person called, that ***clearly authorizes*** the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or pre-recorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered"

**Written agreements must *clearly* and *conspicuously* disclose that**

- The agreement authorizes the caller to deliver telemarketing calls using an ATDS or an artificial or prerecorded voice; and
- The person is not required to sign or enter into the agreement as a condition of purchasing any products, goods, or services

**The agreement must include the consumer's wireless number and his or her signature**

HOLLAND&HART



PLAINTIFF'S EXHIBIT
P3 14

1. You can **go online to register your phone number.** The system will send you a confirmation email. To complete your registration, click on the link in the email within 72 hours after you get it; or

2. You can call 888-382-1222 from the phone number you want on the list.

The Do Not Call list will keep you off for-profit business call lists, because telemarketers are required to check their solicitation lists and remove all registered numbers. But it is not immediate and it will not block all robocalls. Telemarketers update their lists periodically, which according to the Federal Trade Commission (FTC), means it can take up to 31 days before putting your number on the list takes full effect. Even then, political organizations, charities, and survey takers are legally permitted to call you.

Other calls that may come through include those from:

- businesses from whom you've bought something or made a payment to in the last 18 months, unless you have asked them not to call you;
- survey callers to whom you have given permission to make a follow-up call*;
- companies whose fine print you missed that granted them permission to call (by example, when you entered a sweepstakes or signed up for a free product offer); and
- companies trying to scam you who don't care about following the law and who won't bother to screen for numbers on the Do Not Call Registry.

(*Survey callers may sometimes ask if they can make a follow-up call.  Beware.  If you agree, then a for-profit company associated with the survey company can call you with a sales pitch.)

Your phone number will stay on the Do Not Call Registry forever, unless you ask for it to be removed. If you ever get a call from someone offering to sign you up for the registry, it is a scam! The service is completely free and the FTC will not call you to solicit your registration.

Additionally, telemarketers:

- must remove you from their calling lists upon request;

- must provide you with the name and contact information of the company they represent;

- may not call you between the hours of 9:00 p.m. and 8:00 a.m.; a



- may not present fraudulent or misleading information about the products or services they are selling.

Fax numbers are subject to different regulations, so signing them up on this list will not do anything to thwart junk faxes. **See the Attorney General Consumer Alert "Do Not Fax Me!"** for how to stop unwanted faxes.

Finally, the Federal Trade Commission's Telemarketing Sales Rule makes it illegal for a telemarketer to ask you to pay with any of the following three payment methods:

1. Cash-to-cash money transfers like those from MoneyGram and Western Union;

2. PINs from cash reload cards like MoneyPak and Vanilla Reload; or

3. Remotely created payment orders or checks using your bank account information.

If a telemarketer asks you to use any of these payment methods, then the telemarketer is breaking the law. Hang up, and **report it to the FTC.**

# MICHIGAN HOME SOLICITATION SALES ACT

In addition to adopting the federal Do Not Call Registry as the state do not call list for Michigan consumers, the Michigan Home Solicitation Sales Act (MHSSA), establishes a "code of conduct" for telemarketers. Telephone solicitors may not:

- Misrepresent or fail to clearly disclose:

    - the total purchase price of the product being sold;

    - any restrictions or conditions on purchase;

    - any material term or condition regarding refund, cancellation, or exchange;

    - any material aspect of an investment opportunity being offered;

    - the quantity or any material aspect of the quantity, or characteristics of the product being sold;

- Make false or misleading statement to induce payment for goods or se

- Request payment or submit a credit card charge before receiving express verifiable authorization showing that the consumer has agreed to purchase;

- Call a consumer who has requested that he or she not receive calls from the seller;

- Intentionally block or interfere with the caller ID function on a consumer's phone;

- Make a call that consists in whole or in part of a recorded message; and

- Make a telephone solicitation to a telephone subscriber whose number is on the Do Not Call List.

## OTHER REQUIREMENTS

At the beginning of a telemarketing call, the telemarketer must state his or her name and the full name of the business on whose behalf the call is made. A telephone number for the business must be provided on request, and a live person must be available to answer that telephone number and give information describing the business itself and the offer being pitched.

## MICHIGAN TELEMARKETING CURFEW

Michigan's Penal Code makes it a misdemeanor for any telemarketer to make "an unsolicited commercial telephone call" by person or recording device between the hours of 9 p.m. and 9 a.m.  MCL 750.540e(f).

## REMEDY AND PENALTIES

Persons who suffer loss as a result of a violation of the law may bring a private lawsuit to recover actual damages or $250.00, whichever is greater, and reasonable attorney fees.

Violators are also subject to penalties provided by the Michigan Consumer Protection Act, as a violation of the Home Solicitation Sales Act also constitutes a violation of the Consumer Protection Act. The Attorney General, a county prosecutor, or a consumer may bring a lawsuit under the Consumer Protection Act.

Additionally, certain violations are punishable as a misdemeanor, or by [...] for not more than six months or a fine of not more than $500.00, or both. This penalty applies to commission of acts that are defined as being unfair or deceptive by the act, such as certain misrepresentations by telephone solicitors.  It does not apply to violations of the Do Not Call Registry.

Finally, the FTC may impose a fine upon those who violate the National Do Not Call Registry or place an illegal robocall up to $16,000 per call.

Complaints for violations of the no-call law may be filed with the **Federal Trade Commission**, the **Federal Communications Commission**, and with the Attorney General's Consumer Protection Division.

For general consumer questions or to **file a complaint**, you may reach the Attorney General's Consumer Protection Division at:

Consumer Protection Division
P.O. Box 30213
Lansing, MI 48909
517-335-7599
Fax: 517-241-3771
Toll free: 877-765-8388
Online complaint form

*The Attorney General provides Consumer Alerts to inform the public of unfair, misleading, or deceptive business practices, and to provide information and guidance on other issues of concern. Consumer Alerts are not legal advice, legal authority, or a binding legal opinion from the Department of Attorney General.*



**Michigan Department of Attorney General Written Public Summary of the Department's Freedom of Information Act Procedures and Guidelines Michigan Department of Attorney General Freedom of Information Act Procedures and Guidelines**
**FOIA**
**AG Privacy Policy**
**AG Web Disclaimer**

**MICHIGAN.GOV HOME**
**ADA**
**MICHIGAN NEWS**
**POLICIES**



**COPYRIGHT 2020 STATE OF MICHIGAN**

**DEPARTMENT OF ATTORNEY GENERAL**

≡

AG / INITIATIVES / ROBOCALLS

# Michigan Telemarketing Laws / Do Not Call List



(Download and print the designed version of this Consumer Alert)

## TELEMARKETING LAWS PROTECTING MICHIGAN CONSUMERS—DO NOT CALL LIST

Marketing goods or services to potential customers over the telephone is called telemarketing. When you pick up the phone and hear a recorded message instead of a live person, that's a robocall. Increasingly, telemarketing is being done with intrusive robocalls.

This alert provides an overview of Michigan and federal laws aimed at preventing and punishing unwanted telemarketing calls and illegal scams.

## DO NOT CALL LIST

The Michigan Legislature adopted the federal Do Not Call Registry as the state do not call list for Michigan consumers who do not want to receive telemarketing calls at home or on their cell phones.  Registering your telephone number is **FREE**, and there are two easy ways to sign up:

PLAINTIFF'S EXHIBIT
P3 M

EXHIBT

P 4

### TELEPHONE COMPANIES AS COMMON CARRIERS
### Act 206 of 1913

AN ACT to declare telephone lines and telephone companies within this state to be common carriers; to regulate the telephone business; to confer certain powers, duties, and responsibilities on the public service commission; to provide for the consolidation of telephone lines and telephone companies; to prohibit certain uses of telephone lines and telephone equipment; to regulate persons using telephone lines and telephone equipment; to prescribe a penalty for the violation of this act; and to repeal certain acts and parts of acts on specific dates.

**History:** 1913, Act 206, Eff. Aug. 14, 1913;—Am. 1980, Act 47, Imd. Eff. Mar. 19, 1980;—Am. 1986, Act 305, Imd. Eff. Dec. 23, 1986.

*The People of the State of Michigan enact:*

**484.101-484.103f Repealed. 1991, Act 179, Eff. Jan. 1, 1992.**

**Compiler's note:** The repealed sections pertained to the duties, powers, and responsibilities of the PSC in regulating telephone service in competitive markets, basic local exchange service, resale of services, franchise cable companies, and alternative operator service.

**484.103g Repealed. 1995, Act 216, Imd. Eff. Nov. 30, 1995.**

**Compiler's note:** The repealed section pertained to alternative operator service providers.

**484.104-484.114 Repealed. 1991, Act 179, Eff. Jan. 1, 1992.**

**Compiler's note:** The repealed sections pertained to the prohibiting of discriminatory and preferential service; the regulation of connecting, sale or leasing, constructing, and setting rates for lines; and providing complaint and hearing procedures.

**484.115-484.118 Repealed. 1987, Act 5, Eff. Apr. 1, 1987.**

**Compiler's note:** The repealed sections pertained to judicial review of orders.

**484.119-484.124 Repealed. 1991, Act 179, Eff. Jan. 1, 1992.**

**Compiler's note:** The repealed sections pertained to reporting, recordkeeping, and public inspection of records and prescribed penalties for violation of the act.

**484.125 Delivering commercial advertising by recorded message; transfer, assignment, or sale of authorization to contact subscriber; evidence of intention to violate act; action for damages; reporting violations; use of automatic dialing equipment; termination of call; violation as misdemeanor; penalty.**

Sec. 25. (1) As used in this section:

(a) "Caller" means an individual, corporation, firm, partnership, association, or legal or commercial entity who attempts to contact or who contacts a subscriber in this state via telephone or by using a telephone line.

(b) "Caller identification information" means the telephone number from which the call originates or the name of the individual, corporation, partnership, association, or other legal entity subscribing to that telephone number.

(c) "Intrastate" means originating and delivering within this state.

(d) "Subscriber" means an individual who has subscribed to residential, business, or toll-free telephone service from a telephone company regulated by this state, and all other persons with the same legal residence as the subscribing individual.

(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following:

(a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:

(i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.

(ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.

(b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber.

(3) The authorization to contact a subscriber granted under subsection (2)(a)(i) shall not be transferred, assigned, or sold without the written permission of the subscriber.

(4) The use of automated dialing, push button, or tone activated devices which operate sequentially or

Rendered Tuesday, June 23, 2020     Page 1     Michigan Compiled Laws Complete Through PA 91 o...

© Legislative Council, State of Michigan     *Courtesy of www.legislature.m...*



PLAINTIFF'S EXHIBIT P4A

otherwise unable to avoid contacting subscribers who have not authorized the contact as provided in subsection (2) is prima facie evidence of an intention to violate this act.

(5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees.

(6) An employee or officer of a telephone company shall report a person whom the employee or officer in good faith believes may be violating or has violated this act. Alleged violations of this act shall be reported to the county prosecutor for the county in which the violation occurred.

(7) This section does not prohibit the use of automatic dialing equipment for the purpose of advising customers concerning merchandise or goods or services previously ordered.

(8) Recorded commercial advertising that is authorized under this section must end or otherwise free the subscriber's telephone line for incoming and outgoing calls immediately upon the subscriber's termination of the call.

(9) A caller who violated this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both.

**History:** Add. 1980, Act 47, Imd. Eff. Mar. 19, 1980;—Am. 1998, Act 234, Eff. Mar. 23, 1999;—Am. 1998, Act 253, Eff. Mar. 23, 1999.

## 484.126 Repealed. 1991, Act 179, Eff. Jan. 1, 1992.

**Compiler's note:** The repealed section pertained to repeal of MCL 484.101 to 484.103b and MCL 484.103d to 484.126.



PLAINTIFF'S
EXHIBIT
PG B

EXHIBT

P 5

3/20/2020 Third Circuit Confirms That One Call Is All for TCPA Violation | Buchanan Ingersoll & Rooney PC

ARTICLES & ADVISORIES

# Third Circuit Confirms That One Call Is All for TCPA Violation

One errant solicitation call to the wrong person's cellphone is all it takes to trigger liability under the TCPA. That was the essence of last week's decision by the Third Circuit Court of Appeals in the putative class action *Susinno v. Work Out World, Inc.* Judge Hardiman – joined by judges Krause and Stengel – resolved two live issues in the Circuit, and struck fear into the heart of businesses that rely on solicitation calls.

## One Solicited Call Not "Exempt" Even If the Called Party Is Not Charged for the Call

Plaintiff Noreen Susinno, on behalf of a purported class of persons that received one unsolicited call from defendant Work Out World, brought a class action for violation of the Telephone Consumer Protection Act (TCPA). As explained by the Court of Appeals, "the TCPA provides consumers with a private right of action for certain prohibited uses of automated telephone equipment." Incredibly, Ms. Susinno didn't even answer the allegedly illegal call, which went directly to her voicemail.

The trial court had dismissed the suit in part because a single solicitation was not "the type of case that Congress was trying to protect people against." Work Out World had successfully argued that a single call to a cellphone, where the called party wasn't actually charged for the call, doesn't violate the TCPA. The Third Circuit disagreed and reversed the decision, aligning itself with the Eleventh Circuit on the issue. It matters not that the called party wasn't charged for the call, only that the call was made without consent.

## No Go for the *Spokeo* Defense

The trial court had dismissed Ms. Susinno's claims for the additional reason that her receipt of the call and voicemail "caused her no concrete injury." In doing so, the trial court invoked the U.S. Supreme Court's 2016 decision in *Spokeo, Inc. v. Robins*, which clarified in that in order for a plaintiff to have standing to sue in federal court, the plaintiff must suffer a "concrete injury even in the context of a statutory violation." What has followed in the last year is an intense push by the defense bar to assert *Spokeo* in virtually all cases where the plaintiffs assert mere "procedural violations" of statutes such as the TCPA. Attorneys for Work Out World (with supporting briefs from the U.S. Chamber of Commerce) argued that because the plaintiff did not pick up the illegal call, she suffered no concrete injury, and therefore lacked standing. The Third Circuit disagreed. While acknowledging the limiting principle in *Spokeo*, the Court still ruled that the plaintiff sustained an injury to her "privacy rights." Such an injury was sufficiently "concrete," albeit "intangible," to grant the plaintiff standing to pursue her TCPA claim in federal court.

| Contributors | Related Services & Industries | Related Keywords |
|---|---|---|
| CHRISTOPHER J. DALTON | BANKRUPTCY & CREDITORS' RIGHTS | TELEPHONE CONSUMER PROTECTION ACT (TCPA) |
| PATRICK K. DORAN | LITIGATION | |
| SAMANTHA E. SOUTHALL | | |



EXHIBIT
P A

September 23, 2020
Volume X, Number 267



# NATIONAL LAW REVIEW

## Second Circuit Holds Receipt of Unwanted Text Messages, Even Without Other Alleged Harm, Confers Standing for TCPA Claims

Friday, May 17, 2019

Joining similar decisions from the U.S. Courts of Appeals for the Third and Ninth Circuits, the Second Circuit held in *Melito v. Experian Marketing Solutions, Inc.* that the receipt of unwanted text messages, even without any other alleged harm, meets the injury-in-fact requirement for Article III standing to bring Telephone Consumer Protection Act (TCPA) claims.

In rendering its decision, the Second Circuit determined that the plaintiffs—representatives of a conditionally certified settlement class of more than 618,000 people who received text messages on their cell phones from American Eagle Outfitters, Inc. (AEO)—had standing to bring claims under the TCPA. The plaintiffs alleged they received the text messages but did no other harm. The court determined there was standing to bring TCPA claims because "text messages, while different in some respects from the receipt of calls or faxes specifically mentioned in the TCPA, present the same 'nuisance and privacy invasion' envisioned by Congress when it enacted the TCPA." The court also emphasized that the harm was closely related to traditional common law claims for "invasions of privacy, intrusion upon seclusion, and nuisance." Therefore, receiving an unwanted text message suffices to show both a concrete and particularized injury.

*Melito* is the latest TCPA development in the aftermath of the U.S. Supreme Court's decision in *Spokeo Inc. v. Robins*, which held that, in the context of the Fair Credit Reporting Act (FCRA), to have Article III standing, plaintiffs must establish "injury in fact" by showing "an invasion of a legally protected interest" that is both "concrete and particularized." In the FCRA context, *Spokeo* requires more than just a bare procedural violation in order to establish injury in fact.

By contrast, in *Melito*, the Second Circuit joined two other circuits in holding that, in the TCPA context, a text message received in violation of the TCPA – even without more – is sufficient for Article III standing.

*Melito* could lead to even more TCPA class action litigation because, in at least three circuits, there is now no requirement to show harm beyond a technical TCPA violation to have Article III standing. The decisions in *Melito*, along with *Van Patten v. Vertical Fitness Group, LLC*, and *Susinno v. Work Out World Inc.*, could also have other far-reaching consequences because numerous statutes other than the TCPA allow plaintiffs to recover statutory damages where actual damages for violations are often difficult to prove or nonexistent. How courts ultimately resolve the tension between the Supreme Court's FCRA decision in *Spokeo* and TCPA cases such as *Melito* remains to be seen.

Copyright © by Ballard Spahr LLP

National Law Review, Volume IX, Number 137

ARTICLE BY

Daniel JT McKenna
Rachel R. Mentz

Ballard Spahr LLP
Consumer Finance Monitor

## Ballard Spahr
LLP

Communications, Media & Internet
Litigation / Trial Practice
2nd Circuit (incl. bankruptcy)

PRINTER-FRIENDLY
EMAIL THIS ARTICLE
DOWNLOAD PDF
REPRINTS & PERMISSIONS

### TRENDING LEGAL ANALYSIS

A Divided Eleventh Circuit Holds that Incentive Awards are Prohibited
*By Foster Swift*

Breaking News: President Trump Issues Executive Order on Combating Race and Sex Stereotyping
*By Jackson Lewis P.C.*

Mastering the Zoom Apology
*By Hennes Communications*

Nine Tips to Enhance Your Company's Cybersecurity When Employees Work Remotely
*By Godfrey & Kahn S.C.*

Second Circuit Upholds Insider-Trading Conviction and Clarifies Scope of Requisite Fiduciary Relationship
*By Proskauer Rose LLP*

California Governor Signs Legislation to Relax Controversial Independent Contractor Law
*By Hinshaw Andrews Curto*

/ PRINTER-FRIENDLY / EMAIL THIS ARTICLE / DOWNLOAD PDF / REPRINTS & PERMISSIONS

### ABOUT THIS AUTHOR



**Daniel JT McKenna**
*Partner*

Daniel JT McKenna devotes his practice to privacy and data security, consumer financial services, and mortgage banking litigation.

Mr. McKenna's privacy practice focuses on new product and process design, privacy impact assessments and audits, privacy management and policy, incident planning, incident response and notification, third-party and vendor management, privacy counseling, regulatory comments, and litigation. His clients include banks, loan service providers, health care providers, manufacturers, colleges and universities, and member...

mckenna@ballardspahr.com
215.864.8321
www.ballardspahr.com

**Rachel R. Mentz**
*Associate*

As an experienced trial attorney, Rachel R. Mentz works with clients to resolve complex disputes both in and out of court. Ms. Mentz draws from her prior career as a teacher to counsel clients so they understand the legal parameters of a particular dispute or the applicable legal or regulatory framework and can best evaluate their options. She also works with clients to develop programs and best practices to help avoid litigation.

Ms. Mentz has experience litigating cases in both state and federal courts involving contract, intellectual property, trade secret, consumer finance, banking, mortgage lending, creditor-debtor relations, real estate, insurance coverage, construction defect, and employment law issues. She has a strong background in eDiscovery that allows her to work with clients to implement savvy and cost-effective methods for managing internal investigations and discovery.

MENTZR@BALLARDSPAHR.COM
303-299-7367
www.ballardspahr.com




EXHIBIT
Pg B




U.S. POSTAGE PAID
FCM LG ENV
PLYMOUTH, MI
48170
NOV 25, 20
AMOUNT

**$1.20**

R2305M145062-29

1000          48867

**CERTIFIED MAIL**®
FOR USE ONLY WITH IMpb SHIPPING LABEL

Label 3800-N, January 2014          PSN 7690-17-000-0906

The Memorial Hospital
co Brain Long
826 W. King St
Owosso MI 48867